**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

**DOROTHY SISAM, individually, and
MAXIMUM TRANSMISSION,
TELECOM, LLC,**

    *Plaintiffs*,

v.                                                                             **Case No. SA-23-CV-0914-JKP**

**STRATEGIC FUNDING SOURCE,
INC,**

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is *Plaintiff's Motion to Remand* (ECF No. 14). With Defendant's response (ECF No. 16) and Plaintiffs' reply (ECF No. 18), the motion is ripe for ruling. For the reasons that follow, the Court grants the motion.

### I. BACKGROUND

This removed case involves a state action to vacate or modify an arbitration award. The relevant background begins in August 2019 when Defendant Strategic Funding Source, Inc. ("SFS") sued Plaintiffs Maximum Transmission, Telecom, LLC ("MAXTransmit" or "the LLC") and Dorothy Sisam ("Sisam") (collectively referred to as "Plaintiffs" or "Claimants" herein) in Virginia state court. *See* First Am. Statement of Claim (ECF No. 1-1) ¶ 12 (identifying Plaintiffs as Claimants and Defendant as Respondent). In the Virginia action, SFS sued Claimants for $35,990 for breach of contract. *See* ECF No. 18-2 (copy of complaint). SFS based the Virginia action on it advancing $95,000 to Claimants in exchange for future receivables in the amount of $132,050, but Claimants only made payments totaling $98,860. *Id*.

According to the Statement of Claim, SFS and Claimants agreed to settle the Virginia action in January 2020. *Id*. ¶ 13. As part of that settlement, counsel "sent a check for the agreed upon

amount, "$1,000 (nuisance value), as full settlement of the claim against Claimant Dorothy Sisam." *Id*. (emphasis removed). In May 2020, the Virginia court cancelled a hearing by explaining that SFS had mistakenly requested a default judgment hearing when it had intended to stay litigation pending a potential agreed resolution. *Id*. ¶ 14. More than a year later, SFS again attempted to obtain a default hearing. *Id*. ¶ 15. Through their Statement of Claim, Claimants thus made a demand for arbitration on July 2, 2021. *Id*. ¶¶ 8-11.

This Statement of Claim provides the earliest view into the nature and extent of Claimants claims and requested relief. *See id*. at 1-8. Given the importance of this document to the pending motion to remand, a thorough review is warranted. Claimants state at the outset that they have "been harmed by the Respondent's false representations, broken promises, negligent business advice, and deliberately taking advantage of Claimant Dorothy Sisam's age and residence, by filing a motion for default judgment in the [Virginia action]." *Id*. ¶ 3.

Relying on an attached "Revenue Based Factoring (RBF/ACH) Agreement," *see id*. at 10-17, Claimants made their demand for arbitration, *see id*. ¶¶ 8-11. That Agreement permits the parties to "arbitrate any claim, dispute or controversy between [them]." *See id*. at 14, ¶ 4.10(a). The face of that Agreement also indicates that it is for the "Purchase and Sale of Future Receivables" at a purchase price of $95,000, with a specified percentage of 3.9%; a specific daily amount of $430; and a receipts purchase amount of $132,050. *Id*. at 10. The Agreement states that the parties "agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from SFS." *Id*. at 12, ¶ 1.9. Further, the Agreement includes a Guaranty section which states that "[i]t is understood by all parties that this Guaranty is not an absolute guaranty of payment and that the signors are only guaranteeing that they will not take any action or permit [the LLC] to take any action that is a breach of this agreement." *Id*. at 15.

2

In eight paragraphs, Claimants set out facts relevant to their claims. *See id*. ¶¶ 18-25. According to Claimants, SFS offered to lend funds to the LLC on a non-recourse basis, which according to oral statements from SFS meant that "Sisam was **not** personally guaranteeing **any** payments of [the LLC to SFS]" nor "personally guaranteeing the **debt** of [the LLC to SFS]." *Id*. ¶ 18. SFS also "repeatedly stated . . . that, if the small business closes, neither the business nor the owner will be held responsible for repaying the balance." *Id*. The business ultimately closed, but "[i]nstead of honoring the agreement, [SFS] intentionally and wrongfully sought to collect payment for the loan from . . . Sisam – arguing that she personally guaranteed payment." *Id*. ¶ 23. According to Claimants, SFS made a known false statement in the Virginia action when it stated that Sisam "signed the Agreement as guarantor, **agreeing to be obligated to all terms of the Agreement**." *Id*.

The final two factual paragraphs actually provide Claimants' contentions for their claims. *See id*. ¶¶ 24-25. Paragraph 24 states in its entirety: "Respondent's intentional action constitutes fraud against Claimant Dorothy Sisam, as well as a violation of the Deceptive Trade Practices Act." The intentional action appears related to the immediately preceding paragraph that alleged SFS made a known false statement in the Virginia action. Through ¶ 25, Claimants contend that "if Respondent's [sic] intended for . . . Sisam to be bound by the Agreement as a guaranteed [sic] of the payments, then, Respondent's action constitutes fraud in the inducement and the entire agreement is void as a matter of public policy." As support for this contention, Claimants reiterate that SFS expressly represented to them that neither the business nor the owner would be held responsible for the balance owed if the business closed. *Id*. ¶ 25.

In their Statement of Claim, Claimants asserted three claims: (1) breach of contract; (2) fraud in the inducement; and (3) deceptive trade. *Id*. ¶¶ 26-42. As to the breach-of-contract claim, Claimants assert that Sisam signed the Agreement based on the provision that her Guaranty was

3

"**NOT an absolute personal guarantee of payment**." *Id*. ¶ 26(c). They contend that SFS "breached that Agreement and sued Claimant Dorothy Sisam alleging she guaranteed 'payment.'" *Id*. ¶ 26(d). They seek an award of "damages, including their reasonable attorney fees" by the breach of contract. *Id*. ¶ 27.

As an alternative to that claim, Claimants assert fraud in the inducement. *Id*. ¶ 28. They contend that SFS "intentionally and knowingly made false and fraudulent statement . . . regarding whether [the] Personal Guarantee was an absolute personal guarantee of 'payment.'" *Id*. ¶ 29 (emphasis removed). They contend that SFS induced them into signing the Agreement while knowing that it intended to attempt to collect from Sisam if the LLC failed to make payments. Id. ¶ 33. As a result of this fraud in the inducement, "Claimants have been damaged, including the payment of attorney's fees and the AAA arbitration filing fees." *Id*. ¶ 35.

Finally, "[i]n addition to other counts," Claimants assert that SFS has violated the Texas Deceptive Trade Practices Act ("DTPA"), §§ 17.50(a)(1), (2), and (3). *Id*. ¶¶ 36, 40. Claimants do not rely on any additional facts or provide a basis for calculating damages. *See id*. ¶¶ 36-42.

In their prayer for relief, Claimants sought: (1) SFS takes nothing as a result of its breach of contract and fraud in the inducement; (2) Claimants recover actual damages, "including the $1,000 settlement amount," with pre- and post-judgment interest; (3) reasonable attorneys' fees; and (4) "such other and further relief as deemed just an[d] equitable as authorized by statute, including attorney fees and costs, three times damages for deceptive trade practices and exemplary damages." *Id*. (Prayer).

Per an order of the arbitrator, Claimants filed a report pursuant to Fed. R. Civ. P. 26(a)(1) dated January 21, 2022. *See* ECF No. 1-2. They therein state that (1) they "over paid" based on revenue shown by documentation, (2) they have "been damaged in the amount paid to [SFS]" based on the claim of fraud in the inducement, and (3) they are "entitled to statutory damages" on

4

their DTPA claim. *Id*. at 2.

In May 2022, the arbitration came on for hearing and Claimants proposed that they be awarded "$24,842 on their claim" and that SFS take "nothing on its counterclaim." *See* ECF No. 1-5. Their proposed award does not mention exemplary or treble damages but does indicate that they would submit a request for attorney fees. *See id*.

On October 10, 2022, Claimants received an adverse arbitration award. *See* ECF No. 1-3 at 2. As shown in "Appellants Opening Brief" dated January 5, 2023, Claimants appealed the adverse award. *See id*. The appeal continues to assert the three claims they initially asserted. *See id*. at 22-26. The brief sets out some introductory facts concerning the arbitration, including obtaining a $95,000 loan and that "Maxtransmit had paid $98,860" on that loan in less than a year. *Id*. at 2-3. It also set out the terms of an agreed settlement that was intended to avoid the emotional toll and expenses of protracted litigation: (1) Sisam would make one payment of $1,000 within ten days; (2) the LLC would pay $34,990 in bi-weekly payments after SFS dismissed the Virginia action. *Id*. at 19-20. Although Claimants agreed "to a payment schedule for the full amount demanded by SFS," the LLC made no further payments because SFS did not drop the Virginia lawsuit. *Id*. When SFS attempted to move forward with the Virginia litigation, Claimants made their arbitration demand. *Id*. at 21.

Claimants explained that, if "Maxtransmit was only obligated to pay 3.9% of all [its] receivables for all of 2018 and 2019 (which it was not), the maximum dollar amount of SFS's purchase for those two years would have been $74,054," which equates to an overpayment of $24,806 based on the $98,860 paid. *See id*. at 16 (footnote omitted). Claimants calculated such overpayment from gross receipts, a 3.9% charge based on receipts, and the total paid for 2018 and 2019. *See id*. They calculated this overpayment "using SFS's math" that the agreement between the parties was a sale of future receivables rather than a loan with 3.9% interest. *Id*. at 22. However, "[i]n loan

5

terms, Maxtransmit had paid the loan off in full, and a 7% annual return (i.e., more than the 3.9% interest rate that was promised)." *Id*. at 28. Through their appeal, Claimants sought the return of the $1,000 settlement; $24,842 for overpayment to SFS, which they indicate "is significantly understated as it is calculated over the entirety of 2018 and 2019," rather than just the period in question; fees for the underlying arbitration ($11,045) and appeal ($37,000); and $75,000 for attorney's fees based on the amount of fees claimed by SFS. *Id*.

This appeal apparently failed because, on June 22, 2023, Plaintiffs filed an "Original Petition and Motion to Vacate or Modify" an arbitration award dated March 24, 2023. ECF No. 1-7 at 3-5. SFS was served on June 29, 2023. *Id*. at 1. On July 21, 2023, SFS removed the case to this Court. *See* Notice of Removal (ECF No. 1) at 2.

## II. MOTION TO REMAND

Defendant SFS removed this case on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiffs move to remand the case because SFS has failed to establish jurisdiction.

### A. General Principles

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A "defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting § 1441(a)). The "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. There is no dispute, furthermore, that 28 U.S.C. § 1332(a) provides the federal courts with original jurisdiction over all civil actions between "citizens of different States" when the amount "in controversy exceeds the sum or value

6

of $75,000, exclusive of interest or costs."

A party may move to remand a previously removed case. *See* 28 U.S.C. § 1447(c). "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)). "Any ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). The removing party has the burden to show "that federal jurisdiction exists and that removal was proper." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (quoting *Mumfrey*, 719 F.3d at 397).

## B. <u>Diversity Jurisdiction</u>

Plaintiffs challenge both required elements of diversity jurisdiction – diversity of citizenship and amount in controversy. *See* ECF No. 14 at 3-4. SFS opposes both challenges and provides a declaration regarding its citizenship for purposes of diversity jurisdiction. *See* ECF No. 16 at 3-5; ECF No. 16-2. The Court finds that SFS has carried its burden to show that the parties are citizens of different states. It will not further consider the diversity of the parties.

The challenge to the amount in controversy is not so easily resolved. Not only do the parties disagree as to the amount in controversy, but the particulars of this case also add complexity to the usual approach. SFS first sued Sisam and the LLC in state court in Virginia. When a purported settlement for that action failed to finalize, Sisam and the LLC went on the offensive, demanded arbitration, and asserted affirmative claims against SFS. When the initial arbitrator issued an adverse award, they appealed the award, and when the appeal resulted in an adverse award, they filed an action to modify or vacate that award in Texas state court. The task at this point is to determine whether SFS has carried its burden with respect to the amount in controversy required by 28 U.S.C. § 1332(a).

7

Normally, for purposes of removal, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). This is consistent with non-removed diversity cases. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 87 ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."). An important factor in "determining the amount in controversy" is whether the plaintiff has "demanded a specific amount of damages" in their state petition or complaint. *Scarlott*, 771 F.3d at 888. When the initial pleading demands a specific amount, that sum "is itself dispositive of jurisdiction if the claim is apparently made in good faith." *Id*. (quoting *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984)).

"When the Court finds that an operative pleading lacks a good faith monetary demand, 28 U.S.C. § 1446(c)(2) no longer deems the demand as the amount in controversy." *Medina v. Allstate Vehicle & Prop. Ins. Co.*, 458 F. Supp. 3d 591, 596 (W.D. Tex. 2020). In such circumstances, the defendant may still "show that the amount in controversy exceeds the jurisdictional amount" through a showing of the preponderance of the evidence. *See id*. (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995)). "Based upon well-settled circuit precedent, defendants can carry their burden 'if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount.'" *Davalos v. Allstate Fire & Cas. Ins. Co.*, 522 F. Supp. 3d 240, 246 (W.D. Tex. 2021) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (omitting internal quotation marks)).

The above approach applies in the typical circumstance when a defendant removes a state action that the plaintiff had commenced by filing a petition or complaint in state court. The approach differs, however, when plaintiffs seek to confirm, modify, or vacate an arbitration award. For such actions, the Fifth Circuit has affirmed the use of the "demand approach" to determine the

amount in controversy. *See Pershing LLC v. Kiebach*, 819 F.3d 179, 182-83 (5th Cir. 2016). Not only did the Fifth Circuit affirm use of that approach, but it specifically agreed that it was the "more appropriate" approach. *Id*. at 182. Under such an approach, "the amount in controversy is the amount sought in the underlying arbitration rather than the amount awarded.'" *Id*. (citations omitted). Thus, to determine the amount in controversy, courts look to the amount "initially sought in arbitration." *Id*. This is consistent with § 1446(c)(2), which, for diversity cases, deems the amount in controversy to be "the sum demanded in good faith in the initial pleading."

SFS concedes that "Plaintiffs did not specify a specific amount of damages in their arbitration demand." ECF No. 1 at 3. Both sides treat the First Amended Statement of Claim as the initial arbitration demand and this Court has no reason to treat it differently. Furthermore, both sides proceed as though SFS may carry its burden to show that jurisdiction exists by relying on the face of the arbitration demand or by providing evidence that shows by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *Compare id*. at 2 *with* ECF No. 14 at 2-3.

In its notice of removal, SFS makes two arguments for why it is facially apparent that the amount in controversy exceeds the jurisdictional amount. ECF No. 1 at 3-4. First, it argues that the amount is facially apparent through the following process: (1) Plaintiffs assert a claim for fraudulent inducement; (2) in their arbitration disclosures, they assert that the were damaged in the amount paid to SFS; and (3) in their appellate brief they state that they paid SFS $98,860. *Id*. at 3. Second, it argues that (1) Plaintiffs seek treble damages and attorneys' fees under the DTPA; (2) in their proposed arbitration award, Plaintiffs sought damages of $24,842; and (3) trebling that amount puts claimed damages to just under $75,000, but attorney fees would easily make the amount exceed the jurisdictional threshold. *Id*. at 3-4. Although SFS recognizes that the DTPA claim had been dismissed prior to Plaintiffs' proposed award, it submits that "the 'amount in

9

controversy' is determined based on the arbitration demand, not on subsequent events." *Id*. at 3 n.1 (citing *Pershing*, 819 F.3d at 182-83).

In their motion to remand, Plaintiffs argue that SFS has not carried its burden to show the existence of diversity jurisdiction because it has not presented evidence of the amount in controversy with its notice of removal. However, the need for evidentiary support does not arise until "'the plaintiff contests, or the court questions, the defendant's allegation'" regarding the amount in controversy." *Medina*, 458 F. Supp. 3d at 597 (quoting *Dart Cherokee*, 574 U.S. at 89). Both sides have presented evidence. SFS has provided two declarations that Exhibits A (the Statement of Claim), B (Rule 26(a)(1) Report), C (Appellant's Opening Brief), and E (Proposed Award) (ECF Nos. 1-1; 1-2; 1-3; and 1-5) attached to its notice of removal are true and correct copies of the documents attached. *See* ECF No. 1-8 (Ex. H); ECF No. 16-1.

Plaintiffs provide a declaration that, when they brought their demand for arbitration (1) the LLC had net out of pocket loss of $3,600 and Sisam only had a loss of $1,000 and (2) the collective value of all claims asserted, including attorney fees and statutory or exemplary damages, was significantly less than $75,000. ECF No. 16-1 ¶ 2. Through the declaration, Plaintiffs also provide evidence that the claim of SFS in Virginia was for $35,990 and that during the arbitration Plaintiffs took the position that the parties had reached a settlement agreement. *Id*. ¶ 3. With respect to the requested attorneys' fees in its pre-hearing appellate brief, the declaration states that the request was devoid of facts, justified only by the position of SFS that it was entitled to $80,000 in fees, and that based on a load-star calculation fees, combined with all asserted damages, was less than $75,000. *Id*. ¶ 4.

In their motion to remand, Plaintiffs also point out that the only amount stated in their original arbitration demand is the $1,000 settlement amount. ECF No. 14 at 3. As for the claimed $98,860 amount, they argue that such amount is nowhere in the pleadings and ignores the damage

10

model, which shows that they first borrowed $95,000 then repaid slightly more than that. *Id*. at 4. They submit that, at best, the amount claimed is the amount they paid in excess of the $95,000 loan. *Id*. As for satisfying the amount in controversy based upon treble damages, Plaintiffs argue that SFS engages in "rank speculation." *Id*.

In response, SFS re-focuses its arguments. It first argues that a cap on recoverable exemplary damages means that Plaintiffs seek "no less than $200,000." ECF No. 16 at 7. In their Statement of Claim, Plaintiffs did seek unspecified exemplary damages. *See* ECF No. 1-1. And, in general, Texas limits the amount of recovery for exemplary damages. *See* Tex. Civ. Prac. & Rem. Code § 41.008(b). At a minimum, the statutory cap is $200,000. *See id.* But a statutory cap on recoverable damages sets a maximum, not minimum, recoverable amount. Such a cap sets the upper limit on recoverable exemplary damages. SFS has not convinced the Court that a request for exemplary damages is sufficient of itself to meet the $75,000 jurisdictional threshold. This Court has previously noted that "the amount of punitive damages should be proportional to the amount of actual damages." *Medina*, 458 F. Supp. 3d at 600. It thus declined to permit a party to simply point to a category of damages to carry its burden without presenting "more information regarding damages." *Id*.

The cases cited by SFS do not support the proposition that Plaintiffs seek at least $200,000 because they seek exemplary damages. For example, while one court did state that, "[t]o exceed the statutory cap on punitive damages even if no economic damages are shown, Plaintiffs are pleading damages exceeding $200,000," that case included a claim from the plaintiffs that they were "entitled to punitive damages without statutory limit." *See Bates v. Laminack*, 938 F. Supp. 2d 649, 656 (S.D. Tex. 2013). Plaintiffs in this case have made no claim that they seek punitive damages that exceed the statutory cap. SFS must do more than rely on a statutory cap to carry its burden to show that federal jurisdiction exists.

SFS next transitions to Plaintiffs' request for attorneys' fees in their Statement of Claim. "If a state statute provides for attorney's fees, such fees are included as part of the amount in controversy." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Texas permits the recovery of reasonable attorney's fees if the claim is for "an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(b)(8). SFS thus argues that, because Plaintiffs valued their attorneys' fees as $75,000 in their appellate brief, such claim satisfies the amount in controversy so long as the value of any other claim is one penny or more. ECF No. 16 at 7-8. Had Plaintiffs valued their attorneys' fees at that amount when they initially made their arbitration demand, the demand approach would consider that valuation. But Plaintiffs' Statement of Claim does not provide a value for requested attorney fees. And the circumstances then existing would not justify a $75,000 fee request. At that time, Plaintiffs would not have valued their requested fees based upon needing to appeal an initial adverse arbitration award. The $75,000 fee valuation provides no basis to initially value fees at that amount. Moreover, such valuation is completely at odds with Plaintiffs' declaration that, at the time of the initial arbitration demand, all damages, including fees were significantly less than the jurisdictional amount.

In its response to the motion, SFS also contends that Plaintiffs sought return of all amounts paid to it, which means they sought $98,600 and thus independently satisfies the amount in controversy. ECF No. 16 at 8. It argues that the other "'half of the damage model' is the value of the offset claim [it] would have if" Plaintiffs succeeded in voiding the contract due to fraud. *Id*. It premises this argument on the legal principle that the right to offset or some other defense does not reduce the amount in controversy determined by the amount claimed in good faith. *See id*. at 9. That premise, however, misses the point that Plaintiffs claimed no specific amount in their initial arbitration demand. While Plaintiffs might have claimed the full amount they paid subject to an offset by SFS, the record as a whole supports finding that, in their initial arbitration demand, they

12

merely claimed the amount of overpayment, not the full amount. And, even then, the amount of overpayment is dependent on the succeeding theory as to the nature of the underlying contract between the parties – was it a loan with 3.9% interest as Plaintiffs contend or was it a purchase of future receivables as SFS contends. The Agreement that Plaintiffs attached to their arbitration demand seems to support the latter contention, but Plaintiffs interpret it differently. The ultimate interpretation is not at issue at this point. The Court instead examines the parameters of Plaintiffs' claims through their original pleading, which for purposes of this case is their arbitration demand.

SFS also contends that, even if the actual damages on the fraud claim is only $3,600, such claim in addition to $75,000 in fees and $200,000 in exemplary damages exceeds the jurisdictional threshold. *Id*. at 9. This contention fails because Plaintiffs' initial arbitration demand did not claim $75,000 in fees or $200,000 in exemplary damages.

Lastly, SFS revisits the DTPA claim in its response to the motion. *See id*. at 9-10. The DTPA permits consumers to "maintain an action where any [listed act] constitute a producing cause of economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50(a). Because Plaintiffs make no claim for mental anguish, their DTPA claim is limited to economic damages produced by "(1) the use or employment by any person of a false, misleading, or deceptive act or practice" that is listed in § 17.46(b) and "relied on by" Plaintiffs to their "detriment"; (2) a "breach of an express or implied warranty"; or "any unconscionable action or course of action by any person." *See id*. § 17.50(a)(1)-(3). A party prevailing under the DTPA may obtain economic damages and the trier of fact may award treble damages for knowing or intentional conduct. *See id*. § 17.50(b)(1).

The key to such claim establishing the jurisdictional amount is its provision for treble damages. However, "to conclude that the treble damages would put Plaintiffs over the jurisdictional threshold," courts require "some idea of the amount to be tripled." *Medina*, 458 F. Supp. 3d at 600.

13

Here, we have two primary competing amounts depending on which alternate theory would succeed at arbitration. If, as SFS contends, the underlying contract was a purchase of future account receivables, then Plaintiffs damages appear to be at least the nearly $25,000 damages asserted in its proposed damages on appeal. But, under such a theory, the damages arise from Plaintiffs overpaying SFS based on their revenues – these damages do not appear to be the product of the enumerated acts alleged to constitute a DTPA violation. As the party seeking the federal forum, SFS has the burden to show that jurisdiction exists. When a party seeks to utilize the treble damage provision of the DTPA it is part of that party's burden to show that claimed damages flow from the DTPA violation. SFS has not carried that burden here. Accordingly, the Court does not find any overpayment based on revenues subject to trebling.

Plaintiffs, furthermore, have provided a declaration that goes directly to the damages requested in their arbitration demand. At no point in their Statement of Claim do Plaintiffs/Claimants mention any damages for overpayment. Their focus at that point was the return of the $1,000 Sisam paid to settle the Virginia action as to her and to obtain an arbitration award that SFS take nothing on its claims asserted in the Virginia action. The value of that action was approximately $35,000. Six months or so later, Plaintiffs assert unspecified damages for overpayment based on revenues. At that point, it is clear that Plaintiffs pursue a revenue-based claim for overpayment. But revenues come into play only under SFS's theory of the contract. And any such claim appears unrelated to the DTPA claim, which according to the Statement of Claim relates to statements from SFS that Sisam was not a guarantor of payment. That Plaintiffs overpaid based on a revenue theory of the contract does not appear subject to treble damages under the DTPA.

On the other hand, if, as Plaintiffs contend, the underlying contract was a loan with 3.9% interest, then their economic damages do not even reach $5,000 as calculated by Plaintiffs. To the extent these damages flow from a DTPA violation, the preponderance of the evidence does not

14

show that this case satisfies the jurisdictional amount in controversy.

In summary, SFS relies on the face of the initial arbitration demand as supplemented by later filings of Plaintiffs. Plaintiffs, on the other hand, provide a specific declaration as to the value of their claims when they initially made the demand for arbitration. Given the totality of the circumstances and evidence presented, the Court finds that SFS has not carried its burden to show that federal jurisdiction exists in this case. Even with the additional documentation, SFS has not shown that it is apparent from the face of the original arbitration demand that Plaintiffs' claims are likely to exceed $75,000. The original arbitration demand simply provides insufficient particulars. If anything, the initial demand indicates damages far below the requisite jurisdictional amount.

Nor has SFS presented evidence that shows by a preponderance of the evidence that the jurisdictional amount is satisfied. SFS relies on speculation and conjecture as to claimed fees and exemplary damages. Satisfying the jurisdictional amount hinges on the treble damage provision of the DTPA. But, as discussed earlier, SFS has not shown enough damages flowing from the alleged DTPA violation to satisfy the jurisdictional amount, even when tripled. It appears that, based on the arbitration demand, DTPA damages amount to less than $5,000. Tripling that puts damages at approximately $15,000. Commensurate attorney fees and exemplary damages do not push the total amount above the jurisdictional threshold.

Similarly, if the overpayment theory proves to be in play, then Plaintiffs have estimated their damages at just below $25,000. While they do suggest that this figure could be understated, SFS provides no evidence to increase the amount. Similarly, commensurate attorney fees and exemplary damages push the total amount to closer to the jurisdictional threshold, but not over it. Under the totality of circumstances and considering all claims asserted in conjunction, the Court finds that SFS has not carried its burden to show by a preponderance of the evidence that damages are likely to exceed $75,000. It has presented no evidence as to what amount might be trebled for

the originally asserted DTPA claim. The Court will not speculate that any part of the claimed $24,842 is subject to trebling.

In considering and weighing the evidence presented, the Court holds SFS to its burden while remaining cognizant that all ambiguities are construed against removal and in favor of remand. Defendant has not carried its burden to show that the amount in controversy likely exceeds the amount required for diversity jurisdiction. It has thus not carried its burden to establish that federal jurisdiction exists or that removal was proper in this case.

### C. Costs, Expenses, and Fees

Plaintiffs seek an award of costs, expenses, and attorney fees because SFS lacked an objectively reasonable basis to remove this case. ECF No. 14 at 5. Having granted the motion to remand, the Court now considers whether its remand order should include the requested award.

The Court has discretionary authority to award costs and expenses, including attorney fees when ordering a removed case remanded to state court. *See* 28 U.S.C. § 1447(c); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Section 1447(c) provides in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." When the text of a fee-shifting provision "does not specify any limits upon the district courts' discretion to allow or disallow fees," the courts' "discretion is rarely without limits" considering the American system of laws. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 (1989) (quoted with approval in *Martin*, 546 U.S. at 139).

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Martin*, 546 U.S. at 140. Accordingly,

> the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c)

only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

*Id*. at 141. Courts should only award attorney fees when "the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'" *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004) (quoting *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000)).

In this case, Plaintiffs' arbitration demand was exceedingly sparse as to the amount of damages claimed while also specifically seeking attorney fees and claiming exemplary and treble damages. Courts may consider a "failure to disclose facts necessary to determine jurisdiction" when determining whether to exercise discretion to award costs and fees under § 1447(c). *Martin*, 546 U.S. at 141. Plaintiffs later suggested that they sought $75,000 in attorney fees. Although the Court has discounted that amount for various reasons, it finds that such request in conjunction with the uncertain damage amounts from Plaintiffs' arbitration demand provides an objectively reasonable basis for removing this action even though the removal ultimately fails. Furthermore, the issue of treble damages under the DTPA was complicated in this case due to competing theories of the parties and even Plaintiffs did not argue that their revenue-based overpayment amounts did not appear subject to being tripled. The Court raised that matter because the burden rests with SFS to show that federal jurisdiction exists. In addition, the argument regarding offsets was not objectively unreasonable even though the Court disagreed that either the arbitration demand or later documentation of overpayments made the claimed damages subject to any offset.

For all these reasons, the Court finds an objectively reasonable basis for the removal and declines to award costs, expenses, or fees under § 1447(c).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand (ECF No.

14) and **ORDERS** that this case be remanded to the 451st Judicial District Court of Kendall County, Texas, Cause No. 23-316. By separate document, the Court will issue an order remanding this case.

    **IT IS SO ORDERED this 28th day of September 2023.**

*[Signature: Jason Pulliam]*

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**